IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| ALEXANDER RHODES | ) | Case No. |
| | ) | |
| *Plaintiff,* | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| NICOLE PRAUSE | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LIBEROS LLC | ) | |
| | ) | |
| *Defendants* | ) | |

**COMPLAINT - CIVIL ACTION**

Plaintiff Alexander Rhodes, by and through undersigned counsel, hereby states as follows in support of his Complaint against Defendants Nicole Prause and Liberos LLC.

**Parties**

1. Plaintiff Alexander Rhodes (hereinafter "Plaintiff Rhodes") is a private individual residing in the Greater Pittsburgh area, Allegheny County, Pennsylvania at all times material herein. Plaintiff Rhodes is the founder and sole member of NoFap LLC.

2. Defendant Nicole Prause (hereinafter "Defendant Prause") is an individual residing in Los Angeles County, California. Upon information and belief, Defendant Prause is the founder and president of Defendant Liberos LLC. Defendant Prause, over the past year and beyond, has made numerous false and defamatory statements of and concerning Plaintiff Rhodes on the Internet and other mediums.

3. Defendant Liberos LLC (hereinafter "Defendant Liberos") is a limited liability corporation incorporated and licensed to transact business in the State of California. Upon

information and belief, Defendant Prause was acting on behalf of Defendant Liberos LLC at all times material herein.

## Venue and Jurisdiction

4. This Court possesses federal diversity under 28 U.S.C. § 1332 as the parties are diverse in citizenship and the amount in controversy exceeds the jurisdictional minimum of $75,000.

5. Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2) because Defendant Prause purposely directed her tortious activities against Plaintiff Rhodes in the State of Pennsylvania and caused harm to him in this venue. *Dudnikov v. Chalk & Vermillion Fine Arts*, 514 F.3d 1063, 2008 U.S. App LEXIS 1870 (2008).

## Factual Allegations

6. This matter arises out of false and defamatory statements by Defendant Prause, acting in her capacity as owner and operator of Defendant Liberos, alleging that Plaintiff Rhodes is a stalker, misogynist, serial harasser, promoter of violence against women, cyberstalker, subject to restraining/no-contact orders, affiliated with an extremist hate group and threatens rape.

7. Plaintiff Rhodes created the online website called "NoFap" to engage in discussion with others regarding pornography and the problems of excessive consumption.

8. Plaintiff Rhodes created the website primarily because of his own personal experiences with Internet pornography. Around the age of 11, Plaintiff Rhodes encountered pornography while using the Internet. This quickly led to what he refers to as an out-of-control habit that took over his life.

9. Rhodes engaged in online discussion about the subject and noticed that many other people seemed to be experiencing similar issues to his. He was additionally inspired by concepts

that he learned while pursuing an undergraduate biology degree at the University of Pittsburgh. Plaintiff Rhodes formally created NoFap in June 2011 as a forum for people to discuss the effects of excessive Internet pornography viewing, compulsive sexual behavior, and the recovery process. It was first formed as a forum on Reddit (a "subreddit") and then quickly launched its own standalone domain name now at NoFap.com.

10. Plaintiff Rhodes' website became more popular over time, with the current membership exceeding 260,000 forum members and 496,000 Reddit subscribers. The website receives millions of visits per month.

11. Plaintiff Rhodes incorporated NoFap LLC, a single member limited liability company for the purpose of operating NoFap.com and providing support and resources to those who have an addiction to pornography or who feel that they suffer from excessive pornographic consumption.

12. Plaintiff Rhodes has become a widely recognized figure within the emerging field of excessive Internet pornography viewing. While not a mental healthcare professional, Mr. Rhodes offers a unique perspective of a nonreligious person (who does not have moral qualms with using pornography) who used far too much pornography growing up. Plaintiff Rhodes has been willing to transparently talk about the negative effects that he experienced in his life and relationships.

13. Plaintiff Rhodes has consistently stated that he is strictly against addressing excessive pornography consumption with censorship. Rhodes does not push for the creation or consumption of pornography to be banned or restricted in any way. Rhodes aims to provide resources to help people who struggle with compulsive pornography use and to raise awareness about the potential problems associated with excessive Internet pornography consumption.

14. Plaintiff Rhodes has been interviewed for articles about pornography addiction by numerous publications, including *Time Magazine*, the *Pittsburgh Post-Gazette* and *The New York Times*.

15. Plaintiff Rhodes has been interviewed on NPR's *Here & Now*, Showtime's *Dark Net*, CNN's *This is Life with Lisa Ling*, and CBS's *The Doctors*.

16. Rhodes has won The Society for the Advancement of Sexual Health ("SASH") Media Award for his work raising awareness about problematic Internet pornography viewing.

17. Rhodes has written an opinion piece about pornography for *The Washington Post's* website.

18. NoFap has been featured in numerous prominent publications, including *Esquire*, *Business Insider*, *Cosmopolitan*, *New York Magazine* and many more.

19. Plaintiff Rhodes has an excellent reputation within his field. His website has been utilized by many individuals who struggle with issues stemming from excessive pornography consumption.

20. Defendant Prause is a licensed psychologist who frequently argues against the existence of "porn addiction" and pornography-induced sexual dysfunctions in the academic world and in the media. Defendant Prause is frequently cited as an expert in blog articles that discuss purported positive effects of using Internet pornography or endeavor to debunk the concept of "porn addiction."

21. Defendant Liberos is a for-profit "sexual biotechnology company" founded and created by Defendant Prause in 2015.

22. Plaintiff Rhodes has never held himself out to be a medical professional. Plaintiff Rhodes' website does not offer mental healthcare treatment. Rather, Plaintiff Rhodes, through

NoFap, has shared his story and offered a forum for others with similar experiences to discuss their own experiences and solutions that have helped them.

23. Recently, a vigorous academic and societal debate has emerged about whether compulsive pornography use could be considered a behavioral addiction. Plaintiff Rhodes believes that Defendant Prause has targeted him because he runs one of the most popular websites for those who have suffered from the effects of excessive pornography consumption.

24. For over three years prior to October 28, 2019, Defendant Prause has regularly insulted and criticized Plaintiff Rhodes online through a variety of forums, including Twitter, regarding his website, statements and appearances, as well as his associations with other advocates.

25. Beginning on October 27, 2018, the day of the shooting at the Tree of Life Synagogue, Defendant Prause escalated her attacks on Plaintiff Rhodes and NoFap, beginning in a Twitter thread. See Twitter Conversations, attached hereto as **Exhibit 1**.

26. Defendant Prause's posts falsely allege, among other things, that Plaintiff Rhodes:

   a. Threatened to stalk Defendant Prause
   b. Cyberstalks Defendant Prause and other women
   c. Harasses Defendant Prause
   d. Is subject to no-contact/restraining orders
   e. Is misogynistic
   f. Promotes the "Proud Boys" and works with multiple members of the group

27. Defendant Prause has repeatedly claimed that she has reported Plaintiff Rhodes to the FBI for his alleged misconduct.

28. Defendant Prause also accuses NoFap of being a hate group, that NoFap promotes discrimination against protected groups, that NoFap advertises multiple antisemitic groups, and that by visiting NoFap people are supporting misogyny and antisemitism. The accusations against both Plaintiff Rhodes and NoFap will herein be referred to as the "False Statements".

29. Plaintiff Rhodes has not initiated unwarranted communication with or about Defendant Prause or engaged in any behavior that could be reasonably interpreted as cyberstalking Defendant Prause. Plaintiff Rhodes has never cyberstalked Defendant Prause or anyone else.

30. Plaintiff Rhodes has never threatened to stalk Defendant Prause or anyone else.

31. Plaintiff Rhodes has had no known interactions with Defendant Prause outside of a few brief Twitter conversations. The only purpose of any communication ever engaged in by Plaintiff Rhodes with Defendant Prause was in response to escalating personal attacks and defamation by Defendant Prause. On non-private Twitter profiles, postings (often nick-named "tweets") are viewable by any of Twitter's millions of users. Any communication known to ever occur between Plaintiff Rhodes and Defendant Prause has been publicly observable on the Twitter platform. Plaintiff Rhodes never harassed Defendant Prause or anyone else.

32. Plaintiff Rhodes has had zero private interactions with Defendant Prause. Plaintiff Rhodes has never attempted to communicate privately with Defendant Prause, including via social media private messaging (such as Facebook messages or Twitter direct messages), phone call, text message, phone messaging app (such as WhatsApp or Snapchat), webcam communication program (such as Skype or FaceTime), email, postal mail, or any other medium of private communication.

33. Plaintiff Rhodes is unaware of any no-contact or restraining order against him. Plaintiff Rhodes has never been served with, or put on notice of, any court proceeding against him from any law enforcement agency or Court, whether initiated by Defendant Prause or anyone else.

34. Plaintiff Rhodes has never promoted misogyny.

35. Plaintiff Rhodes has never promoted violence against women.

36. Plaintiff Rhodes has never promoted antisemitism.

37. Plaintiff Rhodes has never been charged with, or convicted of, any misdemeanor or felony.

38. The "Proud Boys" is an extremist group which self describes as "Western Chauvinists". The "Proud Boys" only admits men to its group and has been designated by the Southern Poverty Law Center as a hate group.

39. Plaintiff Rhodes has never promoted the "Proud Boys" group and does not condone its extremist rhetoric. Plaintiff Rhodes has never been a member of, or promoted, any hate group.

40. NoFap is a website which hosts online forums consisting of hundreds of thousands of users who have published millions of user-generated messages. NoFap is one of the most visited websites for those who suffer from excessive pornography consumption.

41. NoFap maintains the following terms of service for use of its website:

> **Misogyny, misandry, racism, anti-LGBT, or any sweeping statements pertaining to every member of a demographic of people are not permitted.** Although we may have differing viewpoints, we're all here to provide an inclusive place to help each other abstain from PMO. Particularly, threads attacking women and threads based in hatred toward a specific group of people are not permitted on the forum and subject to moderation action or warning."

See https://forum.nofap.com/index.php?threads/nofaps-forum-posting-rules-and-etiquette-guidelines.121256/ (emphasis supplied), a copy of which is attached hereto as **Exhibit 2**.

42. Anyone with Internet access can register and post on NoFap's forums, but they do have to abide by a published list of rules. Among these rules, the site explicitly bans hate speech, harassment or organizing harassment of any kind, threats, or other unlawful activity. NoFap's usership is incredibly diverse. Plaintiff Rhodes is proud that his website NoFap hosts members from many countries around the world, of various religious and spiritual beliefs (or non-belief), genders, sexual orientations, races, political beliefs, and ages.

43. The forum discussion at NoFap is primarily maintained by volunteer moderators chosen from active and helpful community members.  These community moderators remove rule breaking posts and sanction users who break rules with warnings, temporary bans, or permanent bans.  In the rare occasion that a situation appears serious enough to suggest that somebody may be in harm's way, such as if an individual posted that they plan to commit a violent felony, NoFap would proactively alert local authorities in the area that the poster is believed to reside.

44. In her Twitter attacks and the False Statements, Defendant Prause knowingly and falsely equated posts across various websites, including, but not limited to posts containing the hashtag #nofap, mentioning or referencing "NoFap", or containing "NoFap" in their usernames, by other people to NoFap or Plaintiff Rhodes, with no evidence of any connection between the two, creating the impression that Plaintiff Rhodes and NoFap wrote these posts themselves.

45. Defendant Prause continued her attacks on Plaintiff Rhodes after the initial posts on October 27, 2018, including reposting and disseminating the False Statements on Twitter on November 26, 2018, November 30, 2018, and March 11, 2019.  See Exhibit 1.

46. Among these False Statements, Defendant Prause reached out to a journalist who quoted Plaintiff Rhodes in a story about pornography published in *The Guardian*, tweeting that "there are actual experts who study this topic & don't threaten to rape & stalk women."

47. Upon information and belief, Defendant Prause has repeatedly reached out to journalists to relay false and defamatory information about Plaintiff Rhodes and NoFap.

48. Plaintiff Rhodes has never threatened to rape Defendant Prause or anyone else.

49. Plaintiff Rhodes has never witnessed Defendant Prause being threatened with rape or stalking by anyone or any user of his forums.

50. If Plaintiff Rhodes witnessed a user on his website threatening to rape Defendant Prause or stalk Defendant Prause, Rhodes would alert law enforcement entities.

51. Upon information and belief, Defendant Prause has utilized several anonymous or alias accounts, across several Internet platforms, in an effort to defame, harass, and otherwise disseminate false information regarding Plaintiff Rhodes and NoFap.

52. Upon information and belief, Defendant Prause has also engaged in a campaign of harassing other individuals and organizations, often utilizing false allegations, who Defendant Prause disagrees with, including:

   a. John Adler, MD
   b. D.J. Burr, LMHC
   c. Stefanie Carnes, Ph.D.
   d. Geoff Goodman, Ph.D.
   e. Bradley Green, Ph.D.
   f. Laila Haddad
   g. Linda Hatch, Ph.D.
   h. Donald Hilton, MD
   i. Staci Sprout, LICSW
   j. Gary Wilson
   k. Exodus Cry Inc.

53. At all times material herein, upon information and belief, Defendant Prause used several different Twitter accounts to harass and tortiously injure Plaintiff Rhodes. Defendant Prause would change the name of her personal Twitter account to that of Defendant Liberos, and included Defendant Liberos' logo in her Twitter profile, giving the appearance that her personal Twitter account was the official Twitter account for Defendant Liberos and that she was sending messages on behalf of Defendant Liberos. The cover image of a Twitter account with the username "NicoleRPrause" prominently featured the Liberos company logo.

54. At all times material herein, Defendant Prause was acting on behalf of, and for the benefit of, Defendant Liberos while interacting on Twitter.

55. Starting in September 2019, Defendant Prause has started to allege that in addition to cyberstalking her, Plaintiff Rhodes is now also physically stalking her.

56. On September 4, 2019, Plaintiff Rhodes was contacted by the CBS television show *The Doctors* to appear on the show and discuss his own personal experiences.

57. Plaintiff Rhodes had an initial phone call with a producer. Within the same phone call, Plaintiff Rhodes was informed that Defendant Prause was being considered to appear on the same episode of The Doctors.

58. Upon information and belief, Defendant Prause represented to the production team that Plaintiff Rhodes was stalking her, that Defendant Prause would feel unsafe and threatened if Plaintiff Rhodes were to appear on the show, and that Defendant Prause has a restraining order against Rhodes. Plaintiff Rhodes was subsequently informed by the production team that his appearance was in jeopardy.

59. Plaintiff Rhodes was forced to spend numerous hours and several conversations with the producers of *The Doctors* to defend his reputation and inform them that these allegations were false.

60. Plaintiff Rhodes has never met or even seen Defendant Prause, and to his knowledge, has never been in the same city as Defendant Prause during the period where Defendant Prause claims that Rhodes stalked her. Plaintiff Rhodes has never followed Defendant Prause, visited Defendant Prause's workplace or residence, attempted or desired to see or meet with Defendant Prause, tracked Defendant Prause's movements or whereabouts, or otherwise done

anything that could be reasonably interpreted as stalking Defendant Prause. Rhodes has never stalked Defendant Prause or anyone else.

61. Plaintiff Rhodes made arrangements to fly to California and appear on the show in order to discuss his personal experience and promote NoFap LLC.

62. Defendant Prause published all of the False Statements despite knowing they were false or showing extreme disregard for the truth of the False Statements.

63. The False Statements have been published with malice, in an attempt to harass, embarrass, and discredit Plaintiff Rhodes personally and professionally.

64. The False Statements were directed to Plaintiff Rhodes, and the greatest harm suffered by Plaintiff Rhodes, in the Greater Pittsburgh area.

65. As a direct and proximate result of Defendant Prause's publication of the False Statements, Plaintiff Rhodes has been harmed and continues to be harmed.

## Count I: Defamation – Libel, Libel Per Se

66. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-65 as though set forth fully herein.

67. Defendants published and re-published the False Statements of and concerning Plaintiff Rhodes on the Internet, and other mediums, asserting and creating the false impression that, among other things, Plaintiff Rhodes stalks women, makes rape threats, is a misogynist, works with the extremist group "Proud Boys", and is in violation of no-contact/restraining orders. Further, Defendants published and republished allegations that NoFap supports the extremist/hate group "Proud Boys", promotes misogyny, promotes rape threats, and generally is a hate group.

68. The False Statements contained therein tend to harm the otherwise good reputation of Plaintiff Rhodes as to lower them in the estimation of the community or to deter third persons from associating or dealing with Plaintiff Rhodes.

69. The False Statements contained therein ascribe to Plaintiff Rhodes' conduct, character, and conditions that adversely affect his fitness for the proper conduct of his business, trade and profession.

70. The False Statements contained therein have grievously fractured Plaintiff Rhodes' standing in the community of respectable society by producing a negative impression of Plaintiff Rhodes in the minds of the average persons among whom the False Statements are intended to circulate.

71. The False Statements are intended to, and do indeed, create the impression that Plaintiff Rhodes maintains and promotes extremist values and incites violence against women.

72. Defendants published the False Statements without authorization or consent.

73. The False Statements constitute libel per se as they are false, defamatory, impugn Plaintiff Rhodes' reputation, impute criminal conduct to Plaintiff Rhodes and injuriously affect Plaintiff Rhodes' business name and trade.

74. Plaintiff Rhodes is informed and believes, and upon that basis, alleges that the False Statements were written and published with actual malice in that the False Statements were made with knowledge of their falsity, or with reckless disregard as to the truth or falsity. Plaintiff Rhodes is further informed and believes, and upon that basis, asserts that such False Statements were specifically directed and communicated to individuals considering Plaintiff Rhodes' services, as well as Plaintiff Rhodes' colleagues, associates, team members, neighbors, friends and family, for the purpose of damaging Plaintiff Rhodes' reputation and business.

75. Upon information and belief, the False Statements were read by visitors of the Internet, throughout the State of Pennsylvania and throughout the Greater Pittsburgh area, including but not limited to Plaintiff Rhodes' current, past, and prospective business associates, neighbors, friends, and family.

76. As a direct and proximate result of the False Statements, Plaintiff Rhodes has suffered significant reputational harm and sustained actual damages including, but not limited to, loss of capital and revenue, lost productivity, expenses incurred, and loss of intangible assets in an amount exceeding the jurisdictional minimum of Seventy Five Thousand Dollars ($75,000.00), with the exact amount to be proven at trial.

77. Plaintiff Rhodes requests a permanent injunction halting the continued dissemination of the False Statements described herein, and further ordering Defendants to remove the False Statements from the Internet, and requests Google, Bing, Yahoo! and other search engine providers to remove the Publications, and the URLs containing those statements, from their respective search results. Plaintiff Rhodes further requests that Defendants are enjoined from further activity that would defame and otherwise continue to inflict harm to Plaintiff Rhodes. Without a permanent injunction judgment of this Court, Defendants' false statements will continue to cause great and irreparable injury to Plaintiff Rhodes and Defendants will be able to continue their tortious campaign against Plaintiff.

## **Count II: Invasion of Privacy – False Light**

78. Plaintiff Rhodes repeats and re-alleges each and every allegation contained in paragraphs 1-77 as though set forth fully herein.

79. Through the False Statements, Defendants have given publicity (i.e. widespread dissemination on the Internet) to matters concerning Plaintiff Rhodes that unreasonably place Plaintiff Rhodes in a false light before the public as the Publications create the false impression that Plaintiff Rhodes maintains and promotes extremist values and engages in criminal activity.

80. The False Statements contain such major misrepresentations and create such a false impression of Plaintiff Rhodes' character, history, activities, and beliefs that serious offense may reasonably be expected to be taken by a reasonable person in his position.

81. The false light in which Plaintiff Rhodes has been placed would be highly offensive to a reasonable person.

82. Defendants' actions constitute actual malice as they had knowledge of or acted in reckless disregard as to the falsity of the publicized matters and the false light in which Plaintiff Rhodes would be placed.

83. The false light in which Plaintiff Rhodes has been placed has caused and would cause mental suffering, shame, and humiliation to a person of ordinary sensibilities.

84. As a result of the false light in which he has been placed, Plaintiff Rhodes has suffered harm to his interest in privacy, mental distress, and special damages, in an amount exceeding the jurisdictional minimum of Seventy-Five Thousand Dollars ($75,000.00), with the exact amount to be proven at trial.

## **PRAYER**

WHEREFORE, Plaintiff Alexander Rhodes demands judgment against Defendants Nicole Prause and Liberos LLC, as follows:

(a) Injunctive relief that Defendants are prohibited from republishing the False Statements about Plaintiff, his family, employees, business partners, attorneys,

agents, servants, representatives, businesses, or services which defame, disparage, or contain libelous statements about Plaintiff;

(b) Permanent deletion of the False Statements which name or make reference to Plaintiff Rhodes;

(c) Actual and/or compensatory damages, and punitive damages where available, in an amount exceeding the jurisdictional minimum of $75,000.00 with the exact amount to be proven at trial;

(d) Costs of this action, reasonable attorney fees, and pre- and post-litigation interest at the maximum rate provided by law;

(e) For any and all other relief to which the Court determines Plaintiff is entitled.

**Trial by jury is demanded.**

Respectfully submitted,

*[signature]*

Bruce E. Stanley (PAID: 56840)
Alicia Schmitt (PAID: 200970)
Stanley & Schmitt PC
2424 Craftmont Avenue
Pittsburgh, PA 15205
T: (412) 401-4654
bruce@stanleyschmittlaw.com
alicia@stanleyschmittlaw.com

*Attorneys for Plaintiff Alexander Rhodes*