IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEXANDER RHODES, | : | CIVIL DIVISION |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No.:  2:19-cv-01366 |
| v. | : | |
| | : | |
| NICOLE PRAUSE and LIBEROS LLC, | : | *Electronically Filed* |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |
| | : | |
| | : | JURY TRIAL DEMANDED |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FED.R.CIV.P. 12(b)(2)
and/or ALTERNATIVE MOTION TO STRIKE PURSUANT TO CALIFORNIA ANTI-
SLAPP STATUTE and/or ALTERNATIVE MOTION TO DISMISS FOR FAILURE TO
STATE A CLAIM PURSUANT TO FED.R.CIV.P. 12(b)(6)**

AND NOW, Defendants, Nicole Prause and Liberos, LLC ("Liberos"), by and through

their counsel, file this Memorandum of Law in Support of Motion to Dismiss for Lack of Personal

Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(2) and/or Alternative Motion to Strike Pursuant to

California Anti-SLAPP Statute and/or Alternative Motion to Dismiss for Failure to State a Claim

Pursuant to Fed.R.Civ.P. 12(b)(6), stating as follows:

**OVERVIEW**

Plaintiff's claims must be dismissed for three reasons. First, this Court lacks personal

jurisdiction over Dr. Prause and Liberos, as both Defendants are domiciled in California and the

statements at issue in this defamation action were not directed to Plaintiff as a Pennsylvania

resident.  As such, Defendants do not have minimum contacts with Pennsylvania sufficient to

establish personal jurisdiction.  Second, California's anti-SLAPP statute, which applies to this

1

matter, serves as a bar to meritless defamation claims that are designed to curtail the exercise of free speech rights on matters of public debate. Finally, Plaintiff's claims fail as a matter of law.

## FACTUAL BACKGROUND

This purported defamation matter arises from online posts made by Dr. Nicole Prause.[1] Plaintiff, Alexander Rhodes (hereinafter referred to as "Plaintiff" or "Rhodes"), is an individual who resides in the greater Pittsburgh area. (Cmplt. ¶ 1). He is the founder and sole member of NoFap, LLC, and operates a website called "NoFap", which purports to engage in discussion with others regarding pornography and the problems of excessive consumption and compulsive sexual behavior. (Cmplt. ¶¶9-11). Rhodes maintains the NoFap website as well as a forum on Reddit (a "subreddit") devoted to the same topics. (Cmplt. ¶¶9-10). Likewise, Plaintiff maintains a Twitter[2] account at the handle @nofap, as well as his own personal Twitter account at the handle @AlexanderRhodes.

By his own account, Rhodes has "become a widely recognized figure" within the field of excessive pornography viewing. (Cmplt. ¶ 12). Rhodes claims to have been interviewed for articles about pornography addiction by *Time Magazine,* the *Pittsburgh Post-Gazette* and *The New York Times*. (Cmplt. ¶ 14). He also states that he has been interviewed on NPR's *Here & Now*, Showtime's *Dark Net,* CNN's *This is Life with Lisa Ling*, and CBS's *The Doctors*, which was film in Los Angeles, California. (Cmplt. ¶ 15). Rhodes has also written an opinion piece in the *Washington Post*, and his website NoFap has been featured in *Esquire, Business Insider, Cosmopolitan,* and *New York Magazine*. (Cmplt. ¶18).

---

[1] All facts outlined in this Motion to Dismiss are taken from the Complaint and are accepted as true for purposes of this Motion to Dismiss only. *See Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 368 (3d. Cir. 2002); *Bartholomew v. Fischl,* 782 F.2d 1148, 1152 (3d. Cir. 1986).
[2] Twitter maintains an online social media platform that is based in California.

Dr. Prause is a licensed psychologist and Harvard-trained addiction neuroscientist who resides in Los Angeles, California.  (Cmplt. ¶20).  According to Plaintiff's Complaint, Dr. Prause frequently argues against the existence of "porn addiction" and pornography-induced sexual dysfunctions.  (Cmplt. ¶20).  Dr. Prause is the founder and President of Liberos, LLC, also based in Los Angeles, California, which is a sexual biotechnology company.  (Cmplt. ¶21).

Plaintiff's claims are apparently based on a series of allegedly "False Statements" made online by Dr. Prause regarding NoFap and alleged followers of the anti-pornography movement.[3] While Plaintiff alleges that Dr. Prause insulted and criticized Rhodes online for three years prior to October of 2019, the Complaint and Exhibits thereto focus on the time period from October 27, 2018 through the present.  (Cmplt. ¶25).[4]  Plaintiff alleges that Dr. Prause falsely accused Rhodes of threatening to stalk Dr. Prause, cyberstalking Dr. Prause and other women, harassing Dr. Prause, being subject to a restraining order, being misogynistic, and promoting the "Proud Boys."  (Cmplt. ¶ 26).  Plaintiff also claims that Dr. Prause reported Rhodes to the FBI for his misconduct.  (Cmplt. ¶ 27).  Plaintiff alleges that Dr. Prause made misrepresentations to the producers of the show *The Doctors* regarding Rhodes stalking her after Dr. Prause was asked to be on the same episode.  (Cmplt. ¶¶57-58).[5]

Plaintiff's Complaint also contends that Dr. Prause has accused NoFap of being a hate group, that NoFap promotes discrimination against protected groups, and supports misogyny and antisemitism.  (Cmplt. ¶ 28).  Plaintiff collectively refers to all of the above (regardless of whether

---

[3] Many of these identical claims, including a claim that Dr. Prause was describing Rhodes violation restraining orders, were made against Dr. Prause by Rhodes and others to the California Board of Psychology.  After a three-year investigation, all claims were dismissed as being without evidence.
[4] The Statute of Limitations for defamation actions in Pennsylvania is one year.  42 Pa.C.S.A. § 5523.
[5] Ultimately, Rhodes appeared on that episode and Dr. Prause declined to participate.

the statements are directed to NoFap, other individuals, or Rhodes himself) as the "False Statements," and attaches screenshots of these exchanges as Exhibit 1 to the Complaint.[6]  (Cmplt. ¶ 28, Exhibit 1 to the Complaint).  Rhodes contends that he personally does not promote misogyny, violence against women, antisemitism, and does not personally associate with the "Proud Boys". (Cmplt. ¶¶ 34-38).

Ultimately, Plaintiff claims that the "False Statements" were made by Dr. Prause with the intent to harass and embarrass him personally.  For the reasons more fully stated below, Plaintiff's claims fail as a matter of law.

## LEGAL ARGUMENT

### I.  STANDARD OF REVIEW

On a Motion to Dismiss under Rule 12(b)(6), all allegations in the Complaint are accepted as true and viewed in the light most favorable to the plaintiff.  *Bartholomew*, 782 F.2d at 1152. Viewing the allegations in that light, a motion under Rule 12(b)(6) will be granted where the plaintiff can prove no set of facts that will entitle them to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

On a Motion to Dismiss under Rule 12(b)(2) based on lack of personal jurisdiction, the allegations in the complaint are likewise accepted as true for purposes of the motion.  *Pinker*, 292 F.3d at 368.  However, a Rule 12(b)(2) motion does not require the Court to review only the face of the pleadings; consideration of affidavits submitted by the parties is appropriate.  *Patterson by Patterson v. FBI*, 893 F.2d 595, 603-04 (3d. Cir. 1990).  While a plaintiff need only present a prima facie showing of personal jurisdiction initially, once such showing is countered by an

---

[6] Importantly, and as discussed further below, many of the online exchanges of which Plaintiff complains are directed to and undertaken by the official NoFap Twitter account, not Rhodes personally.

4

affidavit, the plaintiff must present similar evidence in support of personal jurisdiction.[7]  *Id.* (stating that "at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of personam jurisdiction . . . Once the motion is made, plaintiff must respond with actual proofs, not mere allegations.").

## II.  THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS

A federal district court may possess personal jurisdiction over a nonresident of the state where the district court sits to the extent authorized by the law of that state.  *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d. Cir. 1987).  Thus, a Pennsylvania plaintiff may establish personal jurisdiction over a nonresident defendant pursuant to the Pennsylvania long-arm statute, 42 Pa.C.S. §5301, *et seq.*, and in particular Section 5322.  Courts have determined that, practically, for all intents and purposes, Section 5322(b) subsumes all of Section 5322(a), and therefore a federal district court analyzing non-resident defendant contacts with the forum state need only analyze those contacts under Section 5322(b).  *N.A. Water Sys., LLC v. Allstates Worldcargo, Inc.*, 2014 U.S. Dist. LEXIS 146658, n.4 (W.D. Pa. 2014).  Section 5322(b) provides for jurisdiction based on the "most minimum contact with the Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S. § 5322(b).  Thus, the Court must essentially evaluate whether subjecting the nonresident defendant to suit in Pennsylvania constitutes a violation of due process.  *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94 (3d. Cir. 2009).  Under such an analysis, there are two types of personal jurisdiction, general and specific.

---

[7] An affidavit is not necessary as Plaintiff has already admitted that Defendants are residents of California.  (Cmplt. ¶¶ 20-21).

A. **This Court lacks general jurisdiction over Dr. Prause and Liberos**

General jurisdiction arises when a defendant exercises "continuous and systematic contacts with the forum." *Mellon Bank (EAST) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d 551, 554 (3d. Cir. 1993). A court may obtain general jurisdiction in two ways: either through the defendant's exercising continuous and systematic contacts with the forum state or, if the court already possesses general jurisdiction over a corporation, the court may exercise jurisdiction over an affiliated entity under certain circumstances (which is not applicable here). *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538 (M.D. Pa. 2009).

Under the continuous and systematic test, a nonresident defendant must possess "significantly more than minimum contacts." *Provident Nat'l Bank*, 819 F.2d at 437. The Court must evaluate factors such as whether the defendant sells products in the forum, maintains staff there, derives significant revenue from the forum, or advertises in the forum. *Clark v. Matsushita Elec. Indus. Co.*, 811 F. Supp. 1061, 1067 (M.D. Pa. 1993). Other activities to be considered include holding a business license in the forum, filing tax returns in the forum, owning land or personal property in the forum, and employing an agent in the forum. *See Farina v. Nokia*, 578 F. Supp. 2d. 740, 750 (E.D. Pa. 2008).

As it concerns national/internet publications, the Third Circuit has consistently held that such publications are insufficient to constitute continuous and substantial contacts with the forum state. *See Gehling v. St. George's Sch. Of Medicine, Ltd.*, 773 F.2d 539 (3d. Cir. 1985); *Reliance Steel Prods. Co. v. Wastson, Ess, Marshall & Enggas*, 675 F.2d 587 (3d. Cir. 1982). Indeed, in *Barrett v. Catacombs Press*, 44 F. Supp. 2d 717 (E.D. Pa. 1999), the District Court concluded that the Defendant, a resident of Oregon, who posted alleged defamatory information regarding Plaintiff to her website and directed forum members to that information could not be sued in

Pennsylvania as personal jurisdiction was lacking.  The Court easily concluded that the high threshold for general jurisdiction was not met simply by virtue of website and internet postings. *Id.*

Neither Dr. Prause nor Liberos have engaged in anything close to this type of activity directed to Pennsylvania.  Both Dr. Prause and Liberos are based in Los Angeles, California. Neither Dr. Prause nor Liberos have an office or staff in Pennsylvania.  More importantly, the statements Plaintiff complains of were all posted on the Internet, making them nationally available, and were not directed to any particular forum.  The statements at issue here are akin to those at issue in *Barrett*, and simply do not establish general jurisdiction over Dr. Prause or Liberos. Plaintiff does not allege in the Complaint any continuous or systematic contact by Dr. Prause or Liberos with Pennsylvania in order to establish general jurisdiction.

**B.**     **This Court lacks Specific Jurisdiction over Dr. Prause and Liberos**

For specific personal jurisdiction, the Court must undertake a three-part inquiry.  First, the Court must determine whether the nonresident defendant "purposefully directed its activities" at the forum state.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).  Next, the litigation at issue must "arise out of or relate to" one of those directed activities.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).  Third, if the first two requirements have been met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice.  *Burger King*, 471 U.S. at 476.

The first two factors examine the nonresident defendant's minimum contacts with the forum state, and the threshold requirement is that the defendant must have "purposefully availed itself of the privilege of conducting activities within the forum State."  *Hanson v. Denckla*, 357 U.S. 235 (1958).  A defendant's contacts with the forum state must be a "deliberate targeting of

the forum." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d. Cir. 2007). The nonresident defendant must invoke the forum's laws by directing a volitional act toward the forum. *Pinker v. Roche Holdings, Ltd.*, 292 F.3d at 370.

Case law in the Third Circuit regarding specific jurisdiction over Internet postings has consistently held that posting to a website or Internet forum, without more, is insufficient to demonstrate the minimum contacts with a particular forum that is necessary to maintain personal jurisdiction. *See Remick v. Manfredy*, 238 F.3d 248, 259 n.3 (3d. Cir. 2001) (noting that the mere posting of information or advertisements on an Internet website does not confer nationwide personal jurisdiction); *Gorman v. Jacobs*, 597 F. Supp. 2d 541 (E.D.Pa. 2009) (finding lack of personal jurisdiction on defamation claims where the internet forum was not Pennsylvania-specific and the content of the postings were not specifically targeted at Pennsylvania); *Pacheco v. Padjan*, 2017 U.S. Dist. LEXIS 119166 (E.D.Pa. 2017) (finding lack of personal jurisdiction over a defendant related to internet postings because such postings were not directed to Pennsylvania specifically).

In *Barrett*, a case strikingly similar to this matter, the District Court analyzed the varying case law on whether passive website advertisements and Internet postings conferred jurisdiction, and concluded that simply posting something on the Internet, even if allegedly defamatory, was not sufficient to confer personal jurisdiction. *Barrett*, 44 F. Supp. 2d at 728. The Court reasoned that, if posting to the Internet constituted sufficient minimum contacts, then any Internet post would confer national jurisdiction, and essentially undo the entire minimum contacts analysis. *Id.* Further, the Court observed that, unlike magazine distributors who can pick and choose the forums to which they distribute (and who receive revenue in exchange for the distribution) once a post is made to the Internet it is available to all and particular forums cannot be bypassed. *Id.* The Court

also focused on the fact that the nature of the defendant's conduct was non-commercial; she did not actively avail herself of Pennsylvania for the privilege of conducting business in the state by virtue of the postings on her website and Internet forums.  *Id.*

Even more similar to this matter, the Court in *Barrett* observed that the defendant's alleged defamatory statements were directed to the plaintiff in his capacity as a well-known national figure as an advocate against healthcare fraud, and were not in any way directed to him in his capacity as a Pennsylvania resident.  *Id.* at 729.  The Court held that even two direct email communications between the defendant and the plaintiff in *Barrett* did not constitute defendant directing any conduct toward the forum of Pennsylvania for purposes of the personal jurisdiction analysis.  *Id.* For similar reasons that Court in *Barrett* also held that the fact that the plaintiff may have experienced the harm in his residence in Pennsylvania was insufficient to confer jurisdiction.  *Id.* at 731 (citing *Santana Prods. Inc. v. Bobrick Washroom Equip.*, 14 F. Supp. 2d 710 (M.D. Pa. 1998) (noting that unless the forum of Pennsylvania is deliberately targeted, the fact that harm is felt in Pennsylvania from conduct occurring outside of Pennsylvania is never sufficient to satisfy due process)).

Here, Dr. Prause, whether acting in her own capacity or on behalf of Liberos, did not purposefully avail herself of the Pennsylvania forum.  None of the comments or internet postings complained of were directed to this forum in particular, but were all nationally viewable and directed to either Rhodes or more accurately NoFap on a wider, more general scale.  In fact, as argued further below, many of the comments and exchanges of which Plaintiff complains were not directed at and did not involve Rhodes directly, but rather NoFap and those involved in the NoFap forum.  This further demonstrates that none of the activities of which Rhodes complained constituted Dr. Prause or Liberos directing a volitional act toward this forum or towards Rhodes

as a citizen of Pennsylvania.  Indeed, Pennsylvania is not mentioned anywhere in any of the online exchanges.  Dr. Prause did not post any of her comments or information for the purposes of doing business in Pennsylvania.  Her postings are strikingly similar to those at issue in *Barrett* where the Court straightforwardly concluded that it lacked personal jurisdiction over the defendant.  The same conclusion should hold here.

Accordingly, Defendants request that this Court dismiss this matter for lack of personal jurisdiction.

## III.   MOTION TO STRIKE THE COMPLAINT PURSUANT TO THE CALIFORNIA ANTI-SLAPP STATUTE

Alternatively to the above, should this Court conclude that it has personal jurisdiction in this matter, the claims must nonetheless be dismissed pursuant to the California anti-SLAPP statute.  In this diversity matter, pursuant to the *Erie* doctrine, this Court must undertake a choice of law analysis to determine what substantive law to apply to this litigation.  The choice of law rules that are applied to make this determination are those choice of law rules of the forum state, in this case Pennsylvania.  As illustrated further below, applying Pennsylvania choice of law rules to this matter results in the conclusion that California has the most significant interests in this matter, and therefore California substantive law applies.  California law contains what is known as an anti-SLAPP (Strategic Lawsuit Against Public Participation) statute, which acts as a method of dismissing meritless lawsuits filed against defendants for the exercise of their First Amendment rights.  Application of the California anti-SLAPP statute to this matter demonstrates that dismissal is required.

A. **Choice of Law Analysis – California Substantive Law Applies**

1. *A Conflict Exists Between Pennsylvania and California Law*

A federal court sitting in diversity applies the choice-of-law rules of the forum state, here Pennsylvania. The first step under a Pennsylvania choice of law analysis is to determine whether a conflict exists between the laws of the competing states. *See Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388 (3d. Cir. 2016). If the laws of the two states are the same, then there is no conflict and the choice of law analysis is unnecessary. *Pac. Employers Ins. Co. v. Glob. Reinsurance Corp. of Am.*, 693 F.3d 417 (3d. Cir. 2012).

Here, Pennsylvania does not have an anti-SLAPP statute that governs defamation actions such as the instant matter. In contrast, California law contains an anti-SLAPP statute in order to protect its citizens from having to defend meritless lawsuits designed to curtail their free speech rights under the First Amendment.[8] As such, a conflict exists between the two jurisdictions. *See e.g.*, *Alley v. MTD Prods.*, 2017 U.S. Dist. LEXIS 208742 (W.D.Pa. 2017) (noting that a conflict existed between Pennsylvania and Ohio in a product liability action where Ohio law contained a statute of repose on such actions and Pennsylvania did not).

2. *The Conflict Between Pennsylvania and California is a "True" Conflict*

If a conflict exists, the court must next determine whether that conflict is "true," "false," or "unprovided for." *Stanford v. Nat'l Grange Mut. Ins. Co.*, 2014 U.S. Dist. LEXIS 199061 (E.D.Pa. 2014). A "true" conflict exists where both states have an interest in applying their own law. *Atl.*

---

[8] California's anti-SLAPP statute, Cal. Civ. Proc. Code 425.16, was passed in response to the Legislature's finding that there has been a "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." The Legislature also found that it is in the "public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process."

*Pier Assocs., LLC v. Boardakan Rest. Partners*, 647 F. Supp. 2d 474 (E.D.Pa. 2009).  If there is a true conflict, then a court must examine the "policies and interests underlying the particular issue before the court" and apply the law of the state with the "most interest in the problem."  *AmQuip Crane Rental, LLC v. N.L. Carson Constr. Co.*, 241 F.Supp. 3d 530 (E.D.Pa. 2017).

A "false" conflict exists where only one jurisdiction's interests would be impaired by the application of the other jurisdiction's law.  *Wolfe v. McNeil-PPC, Inc.*, 703 F. Supp. 2d 487 (E.D. Pa. 2010).  In such a scenario, the court must apply the law of the state whose interests would be harmed if its law were not applied.  *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d. Cir. 1991).  A conflict is "unprovided for" when neither state has an interest in applying its own law. *Atl. Pier Assocs.*, 647 F. Supp. 2d at 487.  In that case, the court applies the law of the place of the wrong.  *Budget Rent-A-Car Sys., Inc. v. Chappell*, 407 F.3d 166, 170 (3d. Cir. 2005).

A true conflict between California and Pennsylvania law exists here.  Pennsylvania has an interest in providing redress to its citizens for harm allegedly inflicted upon them by defamatory statements.  By not passing a statute similar to the California anti-SLAPP legislation, Pennsylvania has made a policy determination that protecting its citizens from alleged defamatory comments outweighs the interest in providing defendants a method of quickly dismissing meritless lawsuits that masquerade as defamation claims but that are really designed to curtail the rights of free speech guaranteed by the First Amendment.  Likewise, California has a strong interest in protecting its citizens from defamation lawsuits brought with the intention of chilling free speech and public discourse on issues of public importance.  As both jurisdictions have an interest in seeing their laws applied to this matter, this constitutes a "true" conflict.

The fact that the conflict consists of an affirmative statutory enactment by California and a decision not to enact a similar statute in Pennsylvania does nothing to lessen the "true" nature of

the conflict.  In *Alley v. MTD Prods.*, the Court found a true conflict between Pennsylvania and Ohio law concerning a product liability action where Ohio had enacted a ten year statute of repose on such claims and Pennsylvania had not.  *Alley*, 2017 U.S. Dist. LEXIS 208742, at *8.  The Court in *Alley* reasoned that the policy consideration in Ohio enacting their statute of repose and Pennsylvania's decision not to enact one constituted a true conflict for purposes of choice of law analysis, as each state's position reflected a policy decision that each state had an interest in applying to the matter before the court.  The same is the case here, where California has a strong interest in protecting its citizens from meritless defamation lawsuits via its anti-SLAPP legislation and Pennsylvania has an interest in providing redress for its citizens via defamation claims.  Thus, this matter presents a true conflict between California and Pennsylvania law.

3.  *California's Interest in Applying its Law Outweighs Pennsylvania's Interest in Applying its Law.*

As a true conflict exists, the Court must determine which state has the "greater interest in the application of its law."  *Harris v. Kellogg, Brown & Root Servs., Inc.*, 151 F. Supp. 3d 600, 611 (W.D. Pa. 2015).  Pennsylvania applies a "flexible rule which permits analysis of the policies and interests underlying the particular issue before the court" and directs courts to apply the law of the state with the "most interest in the problem."  *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 227 (3d Cir. 2007) (quoting *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796, 805-06 (Pa. 1964)).  In applying this rule, if confronted with a true conflict, the Court must first consider each state's contacts as set forth in the Restatement (Second) of Conflict of Laws.  *See Hammersmith*, 480 F.3d at 231.  The Court then weighs "the contacts on a qualitative scale according to their relation to the policies and interests underlying the [relevant] issue." *Shields v. Consol. Rail Corp.*, 810 F.2d 397, 400 (3d Cir. 1987).

Under Section 6 of the Restatement, the factors relevant to the choice of the applicable law are:

    (a) The needs of the interstate and international systems,

    (b) The relevant policies of the forum

    (c) The relevant policies of other interested states and the relative interests of those states in the determination of the particular issue

    (d) The protection of justified expectations

    (e) The basic policies underlying the particular field of law

    (f) Certainty, predictability and uniformity of result, and

    (g) Ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws, Sec. 6.  When evaluating these factors, the court must take into account the following:

    (a) The place where the injury occurred

    (b) The place where the conduct causing the injury occurred

    (c) The domicile, residence, nationality, place of incorporation and place of business of the parties, and

    (d) The place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws, Sec. 145.  In addition to applying the above factors and determining which jurisdiction has the more significant relationship, the Court must also engage in an "interests analysis," where the Court considers the "interests and policies" that may be validly asserted by each jurisdiction.  *Hammersmith*, 480 F.3d at 235.

Applying the above analysis demonstrates that California law has the more significant interest and relationship to this matter such that its substantive law applies.

14

a.    <u>California's Relevant Contacts are Stronger than Pennsylvania's Relevant Contacts under Section 145 of the Restatement</u>

Beginning with the factors under Section 145 of the Restatement, California has the stronger contacts to this matter than does Pennsylvania. Section 145(a) of the Restatement asks the court to look at the location of the injury. Here, the location of the injury is not particular to Pennsylvania. As described above, the alleged "False Statements" are largely directed to Plaintiff's NoFap website, which is not a Plaintiff in this matter. Moreover, even the comments directed to or implicating Rhodes himself are directed to him in connection with the larger discourse on the subject of pornography addiction and excessive use, and are not specifically directed to him as an individual resident of Pennsylvania. While Rhodes may live in Pennsylvania, the injury, if any, cannot fairly be described as having only occurred in Pennsylvania, particularly given Rhodes' self-proclaimed national notoriety. Therefore, this factor is neutral as any injury that may have occurred is not anchored in any geographic location.

Under Section 145(b), the Court must consider the place where the conduct causing the injury occurred. Both Dr. Prause and Liberos are based in California, and the online postings and Tweets made by Dr. Prause originated from California. As such, this factor weighs in favor of applying California law.

Under Section 145(c), the Court must consider the residence and/or place of business of the parties. While Plaintiff maintains a residence in Pennsylvania, as described above the alleged False Statements are made in the context of his larger status as a figure in a public debate. As such, his residency in Pennsylvania is not directly related to any of the allegedly False Statements or any injury allegedly suffered. Dr. Prause and Liberos are California residents and operate out of California, are subject to California laws, and have an interest in having California law apply. Accordingly, California has the stronger interest under Section 145(c).

Under Section 145(d), the Court must consider the place of the relationship, if any, between the parties. In this matter, the relationship of the parties, by the allegations in the Complaint, exists entirely online in the context of exchanges of postings on Twitter and other online forums. These postings are publicly viewable by anyone in the world with an Internet connection. As such, this factor is neutral, and the parties' relationship really has no central location.

In considering the above factors under Section 145, they are either neutral or weigh in favor of applying California law to this matter.

        b.    <u>California's Relationship to this Case is More Significant than Pennsylvania's Relationship under Section 6 of the Restatement</u>

The Court must next consider the factors outlined in Section 6 of the Restatement. A consideration of these factors results in a conclusion that California has the more significant relationship to this matter.

        *i.*    *Section 6(a) - The needs of the interstate and international systems*

This factor is not directly applicable to this matter and is therefore neutral.

        *ii.*    *Section 6(b) - The relevant policies of the forum*

In weighing this factor and focusing on the forum, Pennsylvania's Legislature has chosen not to enact an anti-SLAPP statute and has provided for recourse in the form of defamation actions for allegedly injured plaintiffs. As such, this factor weighs in favor of applying Pennsylvania law.

        *iii.*    *Section 6(c) - The relevant policies of other interested states and the relative interests of those states in the determination of the particular issue*

California has a strong interest in having California law applied to this case. As illustrated above, California has enacted an anti-SLAPP statute in order to protect its residents from meritless lawsuits masquerading as defamation claims, for instance, while the real intention is to curtail free speech rights. California's anti-SLAPP statute, Cal. Civ. Proc. Code 425.16, was passed in

response to the Legislature's finding that there has been a "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."  The Legislature also found that it is in the "public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process."  Were this matter brought in California, the anti-SLAPP statute clearly would apply.  Thus, this factor weighs in favor of applying California law.

                    iv.    *Section 6(d) - The protection of justified expectations*

Applying California law would protect the justified expectations of the Parties.  Plaintiff, a well-known figure in the field of pornography usage and excessive use, who operates a website and subreddit online viewable to the entire world, could not have had a reasonable expectation that any incident that may occur or alleged injury he may have experienced would be governed by Pennsylvania law.  Plaintiff, in his own Complaint, has indicated he has spoken on this topic in various publications and internet sites that are distributed throughout the country and the world.  His entire exchange with Dr. Prause occurred online and has no physical connection to the Commonwealth of Pennsylvania.  Thus, Plaintiff could not have reasonably expected that the laws of Pennsylvania would apply in this, or any other, dispute related to his online discourse in a public debate.

By contrast, Dr. Prause and Liberos have a justified and reasonable expectation that California law would apply in connection with the alleged False Statements.  Dr. Prause made the alleged False Statements from California, in her professional capacity as a psychologist in California and/or in connection with her California based business, Liberos.  Dr. Prause was exercising her rights of free speech under the First Amendment in commenting on the NoFap

group, and she maintained a reasonable and justified expectation that California law would govern that speech.  Accordingly, this factor weighs in favor of applying California law.

> v.     Section 6(e) - *The basic policies underlying the particular field of law*

Examinations of the policies underlying both defamation law of Pennsylvania and California as well as the anti-SLAPP statute weighs in favor of applying California law to this matter.  Both California and Pennsylvania have the same law as it concerns a claim for defamation.[9]  As such, the policies in that regard are similar and application of California defamation law or Pennsylvania defamation law would be the same. However, if California's substantive law is not applied, an important policy consideration made by the California Legislature would be ignored in that the anti-SLAPP statute is a substantive right provided to California citizens to protect their exercise of free speech.  Put differently, applying Pennsylvania law would ignore an important policy consideration of California, but applying California law would recognize that policy consideration and, if the anti-SLAPP statute does not result in dismissal of this action, the recourse would be the same as under Pennsylvania law.  Thus, this facto weighs in favor of applying California law.

---

[9] California and Pennsylvania have the same elements for a claim of defamation.  Under California law, the elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage.  *John Doe 2 v. Superior Court (2016)*, 1 Cal. App. 5th 1300.  Similarly, Pennsylvania's elements for a defamation claim are (1) defamatory nature of the communication, (2) its publication by the defendant, (3) its application to the plaintiff, (4) the understanding by the recipient of its defamatory meaning, (5) understanding by the recipient that it was intended to be applied to the plaintiff, (6) special harm resulting from its publication; and (7) abuse of a conditionally privileged occasion.  42 Pa.C.S. §8343.

      *vi.*      *Section 6(f) - Certainty, predictability and uniformity of result*

This factor weighs in favor of applying California law.  By applying California law and the anti-SLAPP statute, uniformity and predictability would be upheld for California residents who exercise their rights of free speech.  To apply the law of the state which happens to the residence of the individual about whom a California resident is speaking, even if that speech on the Internet on a public debate, would result in unpredictability and lack of uniformity as the law being applied would change depending solely on where the subject of the speech happened to reside.

      *vii.*     *Section 6(g) - Ease in the determination and application of the law to be applied*

"Ideally, choice of law rules should be simply and easy to apply."  *Restatement (Second) of Conflict of Laws*, Sec. 6 cmt. j.  Here, Plaintiff is a well-known national figure in connection with public debate and discourse surrounding pornography and excessive use, and alleges that a California psychologist, in connection with public discourse that was undertaken entirely on the Internet viewable by the entire world, was injured by certain statements.  Such a scenario is vastly different than an individual who, for instance, purchases a defective product in his home state and is injured at his home by it.  In that example, the forum state is targeted by the company to sell a product to the resident in his home in the forum state.  In this matter, the alleged False Statements have no real connection with Pennsylvania at all; indeed, presumably Plaintiff would have felt harmed by the alleged False Statements no matter where he happened to reside.  There is no real reason to apply Pennsylvania law to this matter other than that Rhodes' address happens to have a Pennsylvania zip code.

However, a simple rule that applies the law of the state from which the speech originated upholds the justifiable expectations of the parties, anchors the application of the law to the facts of

the case, and would result in a selection of substantive law that has an actual connection to the facts alleged.  As such, this factor favors applying California law to this case.

In sum, the factors under Section 6 of the Restatement (Second) of Conflicts weighs in favor of applying California law to this matter.

      c.   <u>California has a More Significant Interest in having its Laws Applied than Pennsylvania.</u>

Having considered the factors under the Restatement (Second) of Conflicts, the Court must next consider the "interests analysis," where the Court generally considers the interests and policies of each jurisdiction.  Similar to the above, Pennsylvania's interest to this matter is largely fortuitous; Pennsylvania simply happens to be the residence of Rhodes.  The alleged False Statements are not directed to Rhodes as a resident of Pennsylvania, and, in fact, are directed to him (or more accurately NoFap) as a national or international figure or entity.  Nothing in the alleged False Statements concerns Pennsylvania directly.

In contrast, California has a strong interest in having its laws apply to this matter.  California has specifically enacted the anti-SLAPP statute to weed out meritless lawsuits that are designed to chill the exercise of free speech by California residents.  California has a strong interest in ensuring that its residents' First Amendment rights are not curtailed by meritless litigation, and California's interest in this regard is actually heightened when those litigants attempt to avoid California's forum and select a forum that does not provide the same level of protection for free speech rights.  Dr. Prause and Liberos, and California residents, should have California law available to them, and California's interest in having its laws and protections apply to its residents, like Dr. Prause and Liberos, greatly outweighs Pennsylvania's interest in this matter.

Therefore, based on the consideration of the above factors, California law should apply to this matter.

**B.  Application of California's anti-SLAPP statute results in dismissal of this matter.**

Under California substantive law, application of the anti-SLAPP statute should result in

dismissal of this matter.  California's anti-SLAPP statute provides, in relevant part:

> (b)(1)  A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.
>
> (2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.
>
> (3) If the court determines that the plaintiff has established a probability that he or she will prevail on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the case, or in any subsequent action, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination in any later stage of the case or in any subsequent proceeding.
>
> (e)  As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Proc Code 425.16.  This provision provides defendants in defamation suits with an early

opportunity to have meritless claims dismissed without having to incur the significant expense of

litigation.   Federal Courts that have considered anti-SLAPP statutes like California's have

21

consistently concluded that they confer substantive rights under the *Erie* doctrine and are therefore considered substantive law applicable by federal courts sitting in diversity.  *See United States ex rel. Newsham v. Lockheed Misseles & Space Co.*, 190 F.3d 963 (9th Cir. 1999) (holding that the anti-SLAPP Motion to strike attorney's fees provisions apply in federal diversity cases); *Liberty Syndergistics Inc. v. Microflo*, 718 F.3d 138 (2d. Cir. 2013) (noting that the California anti-SLAPP statute confers substantive rights on defendants and reflects a substantive policy favoring the special protection of certain defendants); *Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010) (noting that the purposes of the *Erie* doctrine are best served by enforcement of anti-SLAPP statutes in federal court); *Henry v. Lake Charles Am Press, LLC*, 566 F.23d 164 (5th Cir. 2009) (holding that Louisiana law, including the Louisiana anti-SLAPP statute, governed the diversity case).

To determine whether a lawsuit or cause of action should be dismissed under the California anti-SLAPP statute, Section 425.16 establishes a two-part test.  Under part one, the party requesting dismissal has the initial burden of showing that the lawsuit arises from an "act in furtherance of the right of free speech or petition—i.e., that it arises from a protected activity." *Tamkin v. CBS Broadcasting, Inc.*, 193 Cal. App. 4th 133, 142 (2011).  Once the defendant has met that burden, the burden shifts to the plaintiff to demonstrate probability of prevailing in the lawsuit. *Id.*  A cause of action that satisfies both, meaning that it arises from protected speech and lacks merit, is a SLAPP suit and will be stricken under the anti-SLAPP statute.  *Id.*

1.  *Defendants' Conduct Arises from Protected Activities*

A cause of action arises from a protected activity under the California anti-SLAPP statute if "(1) defendants' acts underlying the cause of action, and on which the cause of action is based, (2) were acts in furtherance of defendants' right of petition or free speech (3) in connection with a public issue." *Hall v. Time Warner, Inc.*, 153 Cal.App.4th 1337, 1346 (2007).

As it concerns the first of these elements, the acts alleged herein consist of Dr. Prause posting information on Twitter and other Internet forums concerning the debate surrounding pornography addiction and the effects of excessive use, NoFap and the characteristics of the individuals who tend to associate in that group, and inappropriate comments made by Rhodes.

Next, the court must take those acts complained of and determine whether they were done in furtherance of the exercise of Dr. Prause and Liberos' rights of free speech. "An act is in furtherance of the right of free speech if the act helps to advance that right or assists in the exercise of that right." *Lieberman v. KCOP Television, Inc.*, 110 Cal.App.4[th] 156, 166 (2003). The alleged False Statements of Dr. Prause were done either in response to attacks on her professional credibility and reputation, were part of an engagement in a larger public discourse centered on pornography addiction, or were identifying potential hate speech posted by individuals either on the NoFap site or referencing NoFap in other Internet forums. In any of these contexts, the speech identified by Plaintiff as "False Statements" was clearly in furtherance of Dr. Prause's right of free speech.

Finally, the court must consider whether the acts are in connection with a matter of public interest. While the California anti-SLAPP statute does not define "public interest," its preamble provides that its provisions "shall be construed broadly to safeguard the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Civ. Proc Code 425.16(a). California courts have reasoned that an issue of public interest is any issue in which the public is interested. The issue need not be "significant" to be of "public interest" and protected by the anti-SLAPP statute. *See Nygard, Inc. v. Uusi-Kerttula*, 159 Cal.App.4[th] 1027, 1039 (2008). Here, as Plaintiff alleges in the Complaint, the discourse surrounding pornography addiction and excessive use has received increased attention in recent times, resulting in the NoFap

website having over 260,000 members and 496,000 subscribers on the subreddit forum. (Cmplt. ¶ 10). Plaintiff alleges that the NoFap website receives millions of visits per month. (Cmplt. ¶10). Plaintiff also alleges that a "vigorous academic and societal debate" has emerged about whether compulsive pornography use is a behavioral addiction. (Cmplt. ¶23). As such, this issue is clearly important to the public, and therefore, the third elements is satisfied.

In sum, the acts of Dr. Prause and Liberos at issue in this matter are in furtherance of the rights of free speech and concern an issue of public importance such that the California anti-SLAPP statute applies.

2.      *There is No Probability that Plaintiffs Can Succeed on their Claims*

After Dr. Prause and Liberos have met their burden to show that their acts arose from a protected activity, the court must next analyze whether Plaintiff has met his burden to show a probability of prevailing on his claims. *Zamos v. Stroud*, 32 Cal.4th 958, 965 (2004). In making such a determination, the court considers the pleadings and affidavits submitted by the parties. *Tamkin v. CBS Broadcasting*, *supra*, 193 Cal. App 4th at 145. The court accepts as true the evidence favorable to the plaintiff and evaluates defendant's evidence only to determine if defendant's evidence has defeated that submitted by plaintiff as a matter of law. *Flatley v. Mauro*, 39 Cal.4th 299, 325 (2006).

In this matter, Plaintiff pleads a defamation and false light causes of action. Under California law, defamation may occur by libel or slander. Defamation under California requires a written communication, that is false, that is not protected by any privilege, and that exposes a person to reputational injuries. *See* Cal. Civ. Code. §45. Thus, in order to prevail on a defamation claim, a plaintiff must show "publication." This "publication" does not simply mean that words are posted somewhere for others to read; in the defamation context, "publication" means that a

statement is communicated to a third person who understands its defamatory meaning as applied to the plaintiff.  *See Shively v. Bozanich*, 31 Cal.4th 1230, 1242 (2003).  In other words, publication of the defamatory statement requires that "the statement on which the claim is based must specifically refer to, or be 'of and concerning,' the plaintiff in some way."  *Blatty v. New York Times Co.*, 42 Cal.3d 1033, 1042 (1986).  Whether an alleged defamatory statement can reasonably be interpreted as referring to the plaintiff is a question of law for the court.  *Alszeh v. Home Box Office*, 67 Cal.App.4th 1456, 1461 (1998).

Rhodes simply cannot establish the necessary elements for his defamation claim.  In the body of his Complaint, Rhodes attempts to lump together many different online postings and acts as if those postings were all asserted directly against him personally.  In reality, in the Exhibits Rhodes attached to his Complaint, almost none of the online discourse involves Rhodes personally.  The vast majority of the statements of which Rhodes complains are directed to NoFap the website/online forum, and do not even mention Rhodes at all.

More particularly, as identified above in the Factual Background, Plaintiff alleges that Dr. Prause has defamed him by stating that Rhodes:

- Threatened to stalk Dr. Prause

- Cyberstalked Dr. Prause and other women

- Harassed Dr. Prause

- Is subject to a restraining order

- Is misogynistic

- Promotes the "Proud Boys"

- Has been reported to the FBI

(Cmplt. 26).   Plaintiff also claims that Dr. Prause has stated that NoFap itself is a hate group, promotes discrimination, and support misogyny and anti-Semitism.  (Cmplt. 28).  Taking each of these allegations in turn and examining the online posts in the Exhibits to the Complaint reveals that Plaintiff's claims are wholly unsubstantiated and fail as a matter of law.

First, the only reference to physical stalking of Dr. Prause appears in a Tweet authored by Rhodes himself:



None of the online posts included in the Exhibits to the Complaint reveal a comment where Dr. Prause actually accused Plaintiff of physically stalking her.  Indeed, the only references to physical stalking appear as a result of Rhodes' own joke about someone else stalking Dr. Prause. Plainly, no reasonable person would view what Dr. Prause posted as a claim that Rhodes himself stalked Dr. Prause, and in any event, such a post by Dr. Prause cannot be defamatory of Rhodes given that the post consisted of Rhodes' own words.

Further, a careful comparison of the allegations Rhodes makes in the Complaint about the "False Statements" and the Exhibits he attaches reveals that the claims of promotion of the Proud

26

Boys, misogynistic behavior, threats of rape, harassment, promotion of sexism actually concern

NoFap, not Rhodes:











Indeed, the entire exchange of Tweets attached to Plaintiff's Complaint is between Dr. Prause and

the NoFap Twitter account, not Rhodes.   No reasonable observer to these posts would directly

equate Dr. Prause's statements with Rhodes himself, particularly as Rhodes was communicating entirely with the NoFap Twitter handle and in a manner that distanced himself from the NoFap account by referring to Alexander Rhodes in the third person while using the NoFap Twitter account:



Thus, any reasonable observer would conclude that the exchanges between Dr. Prause and NoFap were different than an exchange between Dr. Prause and Rhodes himself, and any statements made regarding NoFap would not directly concern Rhodes individually.

Rhodes also complains that Dr. Prause claimed he was subject to no contact orders and was reported to the FBI for cyberstalking.  Again, an examination of the actual Exhibits demonstrates that Dr. Prause indicated Rhodes was subject to a no contact "request" by her, which he ignored when he surreptitiously engaged Dr. Prause by using the NoFap Twitter account.



The Exhibits also reflect that Dr. Prause, when discussing reports to the FBI and cyberstalking, was not referring to Rhodes at all, but was actually talking about Gary Wilson, one of Rhodes' fellow anti-porn crusaders who runs the website yourbrainonporn.com:





Similar to the above, no reasonable person would view any of these statements as being directed to Rhodes personally. The statements of which Plaintiff complains and has attached to his own Complaint are either directed to NoFap or clearly to individuals other than Rhodes. As such, Rhodes cannot establish that these statements were "published" against him individually, and therefore his defamation claims fail as a matter of law. As Rhodes cannot demonstrate a probability of success on his claims, the California anti-SLAPP suit bars this matter.

It is especially clear that Rhodes cannot sustain his defamation claims when taking into consideration the heightened burden Rhodes must meet as a limited public figure. Under California law, an individual becomes a public figure when there is a public controversy, plaintiff undertakes some voluntary act through which he or she seeks to influence resolution of the issue, and the statements at issue are germane to that controversy. *See Copp v. Paston*, 45 Cal.App.4th 829, 845-46 (1996). Here, Rhodes thrust himself into a public debate surrounding pornography addiction by creating the NoFap website and accepting various national speaking engagements. Additionally, the statements at issue concern this public debate, and as such, Rhodes is considered a limited public figure. As such, to succeed on his claims, Rhodes must prove, in addition to the above elements, that the allegedly defamatory statements were made with knowledge of their

falsity or with reckless disregard for their truth.  *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-280 (1964).  Rhodes must prove the elements by clear and convincing evidence.  *Id.*

Plaintiff cannot take statements directed to NoFap and other individuals, loosely lump them all together as if they were each asserted against him, and then maintain a cause of action in his personal capacity and expect to meet his heavy burden.  Stated differently, no reasonable person would view these comments about NoFap, Gary Wilson, or others and attribute them to Rhodes directly.  As stated above, the complained of statements must specifically refer to or be of or concerning Rhodes in some way.  The only online posting that is attributed to Rhodes directly exists because Rhodes tweeted it himself.  The remainder of Rhodes' complaints simply does not refer to him or concern him personally.  As such, Plaintiff cannot maintain his defamation claim particularly with the heightened burden he carries as a limited public figure.

Plaintiff's false light claim fails for many of the same reasons.  A false light claim "is in substance equivalent to the [plaintiff's] libel claim, and should meet the same requirements of the libel claim on all aspects."  *Kapellas v. Kofman*, 1 Cal.3d 20, 35 n.16 (1969); *see also Gilbert v. Sykes*, 147 Cal.App.4[th] 13, 34 (2007) (noting that the failure of the defamation claim results in the failure of all other causes of action based on the same publications).

In sum, Plaintiff cannot meet his burden to show a probability of success on his claims, as the statements he identified as being defamatory are not actually directed to him, do not mention him, and no reasonable person would attribute those statements to Rhodes personally.  Accordingly, the California anti-SLAPP statute requires dismissal of this action.  Furthermore, as per the California anti-SLAPP statute, Dr. Prause and Liberos are entitled to and hereby demand their attorney's fees for having to defend this meritless lawsuit.

## IV.    <u>PLAINTIFF'S DEFAMATION CLAIMS FAIL AS A MATTER OF LAW</u>

Separate and apart from the above argument regarding the California anti-SLAPP statute, Plaintiff's claims fail as a matter of law.  Regardless of whether California law or Pennsylvania law applies, Plaintiff cannot sustain his causes of action.  As such, this matter should be dismissed with prejudice.

As it concerns the elements of a defamation claim, California and Pennsylvania have the same elements for a claim of defamation.  Under California law, the elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage.  *John Doe 2 v. Superior Court (2016)*, 1 Cal. App. 5th 1300.  Similarly, Pennsylvania's elements for a defamation claim are (1) defamatory nature of the communication, (2) its publication by the defendant, (3) its application to the plaintiff, (4) the understanding by the recipient of its defamatory meaning, (5) understanding by the recipient that it was intended to be applied to the plaintiff, (6) special harm resulting from its publication; and (7) abuse of a conditionally privileged occasion.  42 Pa.C.S. 8343.  In particular, both laws have an express requirement that the recipients of the statements are able to reasonably appreciate the connection between the statements and the actual plaintiff.  *See Blatty v. New York Times Co.*, 42 Cal.3d 1033, 1042 (1986); *Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899 (Pa. 2007).

For the same reasons explained above, Plaintiff cannot demonstrate that a reasonable person would attribute the statements to him personally such they cause him harm.  The referenced statements, save for one posting that Rhodes himself authored, are directed to NoFap the website/group or Rhodes' colleagues.  No reasonable person would attribute the referenced statements regarding the membership of the NoFap group or the actions of Rhodes' colleagues

directly to Rhodes personally.  As such, and for the same reasons outlined above, Rhodes' claims

fail as a matter of law.

Moreover, "defamation does not lie for disagreements over opinions or opinions that my

not flatter the subject."  *Sprague v. Porter*, 2013 Phila. Ct. Com. Pl. LEXIS 368 (2013); *see also*

*Ringler Associates Inc. v. Maryland Casualty Co.*, 80 Cal. App. 4th 1165 (2000) (noting that in

general an essential element of defamation is that the publication be of a false statement of fact

rather than opinion).  Many of the statements at issue in Plaintiff's Complaint can be seen as

opinion regarding the characteristics of the membership of NoFap or the type of activities and

viewpoints that NoFap supports and encourages.  For this additional reason, Plaintiff's claims fail

as a matter of law and should be dismissed with prejudice.

## CONCLUSION

Based on the foregoing, Plaintiff's claims should be dismissed with prejudice.


**A JURY TRIAL IS DEMANDED**

Date:  December 20, 2019                                Respectfully submitted

                                                       CIPRIANI & WERNER, P.C.

                                             BY:    */s/ Philip J. Sbrolla*
                                                    PHILIP J. SBROLLA, ESQUIRE
                                                    PA ID No.  90231
                                                    JASON R. McLEAN, ESQUIRE
                                                    PA ID No.  306835
                                                    650 Washington Road, Suite 700
                                                    Pittsburgh, PA  15228
                                                    (412) 536-2500
                                                    psbrolla@c-wlaw.com
                                                    jrmclean@c-wlaw.com
                                                    *Counsel for Defendants, Nicole*
                                                    *Prause and Liberos LL*

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such to all counsel of record.

*/s/ Philip J. Sbrolla*
PHILIP J. SBROLLA, ESQUIRE